FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARAMIE PLEASANT, a single person,<br><br>                    Plaintiff,<br><br>        v.<br><br>WASHINGTON STATE, WASHINGTON STATE PATROL, CHIEF JOHN R. BATISTE, individually and in his official capacity, TROOPER MICHAEL L. CHRISTENSEN, individually and in his official capacity, TROOPER KARL A. FENSTER, individually and in his official capacity, TROOPER AARON A. NORTON, individually and in his official capacity, TROOPER CHARLES ROB GARDINER, individually and in his official capacity,<br><br>                    Defendants. | No. 2:23-CV-00246-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>**ECF No. 22** |

On August 6, 2024, the Court held a hearing on the State Defendants'

Motion for Summary Judgment, ECF No. 22. ECF No. 38. Douglas D. Phelps

appeared on behalf of Plaintiff Laramie Pleasant. Tyler D. Lloyd and Michael

ORDER - 1

Stapleton[1] appeared on behalf of all defendants except Defendant Lamarr Craig (collectively the "State Defendants").  Defendant Craig did not appear.

Pleasant pursues claims under 42 U.S.C. § 1983 and state law.  The State Defendants move for summary judgment on each of Pleasant's claims.  For the reasons stated herein, the State Defendants' motion is granted in part and denied in part.

## BACKGROUND

### A. Relevant Procedural History

In March 2023, Pleasant filed this action related to a March 2020 traffic stop conducted by the Washington State Patrol.  ECF No. 1.  Pleasant alleges violations of 42 U.S.C. § 1983 pursuant to the Fourth, Eighth, and Fourteenth Amendments; malicious prosecution; intentional infliction of emotional distress pursuant to state law; and negligent hiring, training, and supervision pursuant to state law.  *Id.* at 7-13 ¶¶ 4.29-9.35.  She named as Defendants (1) Washington State, (2) the Washington State Patrol, (3) John R. Batiste, Chief of the Washington State Patrol, individually and in his official capacity, (4) Washington State Patrol Troopers Michael L. Christensen, Karl A. Fenster, Aaron A. Norton, Charles Rob Gardiner,

---

[1] Mr. Stapleton appeared as a licensed legal intern under Washington Supreme Court Admission and Practice Rule 9, supervised by Mr. Lloyd.  ECF No. 40.

and Jennifer D. Barrett, individually and in their official capacities, (5) Lamaar

Craig, who was not named in any claims but was listed as a defendant, (6) and

Probation Officer Fisk, who also was not named in any claims but was listed as a

defendant.[2]  *See generally id.*  The Complaint attaches an Affidavit for Search

Warrant by Trooper Fenster, a state prosecutor's motion to dismiss a related

criminal case against Pleasant, and the order dismissing that criminal case.  *Id.* at

16-23.

The State Defendants moved for summary judgment.  ECF No. 22.  In

support, they filed a Statement of Material Facts Not in Dispute,[3] ECF No. 23; and

---

[2] The Court subsequently dismissed Defendants Barrett, Craig, and Fisk.  *See* ECF

Nos. 47, 52.

[3] The State Defendants initially failed to comply with LCivR 56(c)(1)(A), which

requires that, "[a]s to each fact, the statement shall cite to the specific page or

paragraph of the record where the fact is found[.]"  Their Statement of Material

Facts lists facts but does not cite to the record in support of each fact.  *See* ECF No.

23.  However, the "Statement of Facts" section in their Motion does cite to the

record in support thereof.  ECF No. 22 at 2-4.  Further, their Reply Statement of

Material Facts explains that it aims to remedy the earlier omission by providing

proper citations to the record.  *See* ECF No. 32.

ORDER - 3

the Declaration of Karl Fenster, ECF No. 25, which attaches copies of the Search

Warrant, Affidavit for Search Warrant, Return of Service of Search Warrant, and a

statement explaining Trooper Gardiner's experience with Narcotics K9 Corbin,

ECF No. 25-1; and three dashboard camera ("dashcam") videos, ECF Nos. 25-2,

25-3, 25-4.

Pleasant filed a response, including a Declaration of Douglas Phelps, ECF

Nos. 27, 27-1, which attaches Trooper Fenster's Report of Investigation following

the incident underlying this case, ECF No. 27-2, Trooper Fenster's Affidavit for

Search Warrant and the Search Warrant, ECF No. 27-3, and a Statement of

Disputed Facts,[4] ECF No. 27-4.

---

[4] Pleasant's Statement of Disputed Facts fails to comply with Fed. R. Civ. P.

56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the

assertion by: . . . citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or

declarations, [etc.]; or . . . showing that the materials cited [by the opposing party]

do not establish the absence . . . of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact.") and LCivR 56(c)(1)(B)

("As to each disputed fact, the statement shall cite to the specific page or paragraph

of the record where the disputed fact is found[.]").

ORDER - 4

The State Defendants filed a reply, ECF No. 30, including another Declaration by Trooper Fenster, ECF No. 31, and a Reply Statement of Facts, ECF No. 32. The parties then filed a Joint Statement of Uncontroverted Facts, ECF No. 33.

The Court subsequently ordered, and the parties submitted, supplemental briefing regarding the Eleventh Amendment issue, ECF Nos. 47, 48, 50, 51.

This is the entirety of the material before the Court. Pleasant has not offered any sworn statement from herself, Craig, or anyone else, nor any other evidence, to dispute the statements of the law enforcement officers involved in the incident. She has not challenged, by citing to evidence in the record, the credibility of the law enforcement officers or the veracity of their statements. In fact, the most detailed account of the incident is in Trooper Fenster's Report of Investigation, which Pleasant herself filed in support of her response. ECF No. 27-2.

Therefore, the following factual background is derived from the uncontested statements of the law enforcement officers, whose account of events has not been disputed by Pleasant with evidence in the record, and the dashcam videos.

**B. Factual History**

On March 11, 2020, at approximately 1:48 p.m., Craig was driving Pleasant's vehicle on State Road 395, with Pleasant as a passenger. ECF No. 33 at 2 ¶ 1 (citing ECF No. 25 at 2 ¶ 3, 3 ¶¶ 7-8). Trooper Fenster was in his service

vehicle on the right-side shoulder of Route 395 in the process of clearing a traffic stop with his emergency lights on.[5]  ECF No. 27-2 at 2.  Craig passed Trooper Fenster while in the right lane, then quickly moved into the left lane after passing the Trooper's vehicle.  *Id.*; ECF No. 25-2 at 00:20-00:25.

Trooper Fenster pulled Craig over for what he perceived to be a violation of RCW 46.61.212, a state traffic law.[6]  ECF No. 33 at 2 ¶ 3 (citing ECF No. 25 at 3 ¶ 5; ECF No. 25:2 at 00:23-01:29; ECF No. 31 at 3-4 ¶ 11).  Trooper Fenster asked Craig to step out of the vehicle and for his driver's license, and explained the reason for the stop was Craig's failure to move into the left lane while passing Trooper Fenster's service vehicle.  ECF No. 25-2 at 01:45-03:45.  Trooper Fenster

---

[5] Pleasant contends that it is disputed whether Trooper Fenster's emergency lights were flashing.  ECF No. 33 at 2 ¶ 2.  As noted *supra* note 4, Pleasant has not properly disputed that Trooper Fenster's emergency lights were flashing.

[6] In relevant part, RCW 46.61.212 provides:

> (2) The driver of any motor vehicle, upon approaching an emergency or work zone, shall:
> . . .
> (b) On a highway having less than four lanes, proceed with caution, reduce the speed of the vehicle, and, if the opportunity exists, with due regard for safety and traffic conditions, and under the rules of this chapter, yield the right-of-way by passing to the left at a safe distance and simultaneously yield the right-of-way to all vehicles traveling in the proper direction upon the highway[.]

asked where Craig was heading, and Craig explained that he and Pleasant were going to meet with Pleasant's probation officer as Pleasant was on Department of Corrections supervision. ECF No. 25-2 at 03:45-04:30. Craig told Trooper Fenster that his license might be suspended. ECF No. 33 at 3 ¶ 4 (citing ECF No. 25 at 3 ¶ 7); ECF No. 25-2 at 04:30-05:00.

Trooper Fenster went to the right side of the vehicle to ask Pleasant for her license and registration. ECF No. 33 at 3 ¶ 5 (citing ECF No. 25 at 3 ¶¶ 7-9); ECF No. 25-2 at 07:45-08:05. Pleasant checked her license status and told Trooper Fenster that she and Craig were going to meet her probation officer in Spokane. ECF No. 27-2 at 2. Trooper Fenster observed a large amount of cash in Pleasant's wallet and asked her about it; she replied it was for rent, which was normally due on the fifth of the month. *Id.*

Pleasant told Trooper Fenster that she was on supervision for a methadone charge and that she used methadone to get off heroin. *Id.* While speaking with Pleasant, Trooper Fenster saw several scent refreshers hanging from the rearview mirror and tucked into the air vents. *Id.*

Trooper Fenster asked for proof of insurance and vehicle registration; Pleasant produced the registration but could not immediately provide unexpired insurance information. *Id.*; ECF No. 25-2 at 11:00-13:35. As she continued searching, Trooper Fenster walked back toward his vehicle, where Trooper

ORDER - 7

Christensen had arrived on scene and was speaking with Craig.  ECF No. 27-2 at 2; ECF No. 25-2 at 13:30-13:35.  Craig asked if he could retrieve a sweatshirt from the vehicle.  ECF No. 27-2 at 2.  Trooper Fenster said yes, and followed Craig to the left rear door and observed Craig retrieve his sweatshirt.  *Id.*; ECF No. 25-2 at 13:35-13:50.  Trooper Fenster observed a small piece of crumpled tin foil on the floor of the car behind the driver's seat.  ECF No. 27-2 at 2-3.  Trooper Fenster believed that the excessive scent refreshers and crumpled tin foil were indicia of narcotics use.  *Id.*

Trooper Fenster ran Craig's and Pleasant's licenses and found that both were suspended.  ECF No. 33 at 3 ¶ 5 (citing ECF No. 25 at 3 ¶¶ 6-9).  By the time Trooper Fenster finished checking the licenses, and approximately fifteen minutes into the traffic stop, Troopers Gardiner and Standiford also arrived on scene.  ECF No. 27-2 at 3; *see also* ECF No. 25-2 at 15:35-15:45.

Trooper Fenster and Trooper Christensen discussed the crumpled tin foil.  ECF No. 25-2 at 18:55-19:45.  Trooper Christensen asked Pleasant for permission to retrieve the tin foil and she consented.  ECF No. 27-2 at 3; ECF No. 25-2 at 21:20-21:30.  Trooper Christensen retrieved and inspected the tin foil.  ECF No. 27-2 at 3; ECF No. 25-2 at 21:30-22:12.  Troopers Christensen and Fenster continued to question Pleasant and she denied that there was anything illegal in the vehicle.  ECF No. 27-2 at 3; ECF No. 25-2 at 22:20-22:25.  Trooper Christensen

ORDER - 8

asked Pleasant for permission to search the vehicle; she initially seemed to consent to a limited search, but as Trooper Christensen sought clarification, she made inconsistent expressions about whether she consented.  ECF No. 27-2 at 3; ECF No. 25-2 at 22:25-26:45.  Trooper Christensen then asked Pleasant to exit the vehicle and she complied.  ECF No. 27-2 at 3; ECF No. 25-2 at 27:05-27:15.

Approximately thirty minutes into the stop, Trooper Gardiner deployed K9 Corbin, who is trained to detect cocaine, crack cocaine, methamphetamine, and heroin.  ECF No. 27-2 at 3; ECF No. 25-2 at 29:15.  Corbin gave a positive alert to narcotics in the vehicle.  ECF No. 27-2 at 3.

Pleasant provided a name and phone number for her probation officer, Fisk.  *Id.*; ECF No. 33 at 4 ¶ 9 (citing ECF No. 25 at 4 ¶ 16); ECF No. 25-2 at 31:50-32:10.  Pleasant told Trooper Gardiner that she tested positive for cocaine use two weeks prior, though opiates were her drug of choice.  ECF No. 33 at 3 ¶ 8 (citing ECF No. 25 at 4 ¶ 15); ECF No. 27-2 at 3; *see also* ECF No. 25-2 at 37:00-37:20.  Trooper Fenster contacted Probation Officer Fisk by phone, who reported that Pleasant had tested positive for cocaine and fentanyl, had recently undergone detox, and was transferring her supervision to Spokane to avoid residential treatment.  ECF No. 27-2 at 3; *see also* ECF No. 25-2 at 40:05-44:40.

Trooper Fenster believed there was probable cause to suspect there were narcotics in the car and, at 4:24 p.m., submitted an Affidavit for Search Warrant to

a state superior court judge.  ECF No. 27-2 at 3; ECF No. 27-3 at 2-4 (Affidavit).

The Affidavit indicates that Trooper Fenster was "first duly sworn on oath,"

includes Trooper Fenster's digital signature, and indicates that it was "[s]ubscribed

and sworn to" the superior court judge on March 11, 2020.  ECF No. 27-3 at 2-4.

The Affidavit does not recite that it was certified under penalty of perjury and does

not include the place of its execution.  *See id.*

At 4:32 p.m., a superior court judge issued a warrant to search the vehicle.

*Id.* at 5.  Troopers Christensen and Fenster began the search at approximately 4:37

p.m.; Trooper Norton remained on the scene.  ECF No. 27-2 at 4.  The officers

found three containers holding several blue "M/30" pills, drug paraphernalia,

containers and straws with residue, and $705.[7]  ECF No. 33 at 4 ¶ 11 (citing ECF

No. 25 at 5-6 ¶ 21); ECF No. 25-1 at 6.

Pleasant was detained in the Troopers' vehicle for around three hours until

she was Mirandized at 5:32 p.m.  ECF No. 33 at 4 ¶ 12 (citing ECF No. 25 at 6 ¶

22).  During this time Pleasant did not request food, water, or the use of a

---

[7] Pleasant contends that it is disputed whether packaging, containers, or straws with

residue were found.  ECF No. 33 at 4 ¶ 11.  As noted *supra* note 4, Pleasant has not

properly disputed that packaging, containers, or straws with residue were found.

ORDER - 10

restroom.[8]  *Id.* at 4 ¶ 13 (citing ECF No. 25 at 7 ¶¶ 30-31; ECF No. 25-3; ECF No. 25-4 at 00:01:05).  She was allowed to leave the vehicle to smoke and walk her dogs.  *Id.* at 5 ¶ 14 (citing ECF No. 25 at 7 ¶¶ 30-31; ECF No. 25-3; ECF No. 25-4).

Pleasant was transported to the Washington State Patrol Ritzville Detachment Office at 6:30 p.m.  *Id.* at 4 ¶ 12 (citing ECF No. 25 at 6 ¶ 24).  Law enforcement released her to her father.  *Id.* at 5 ¶ 16 (citing ECF No. 25 at 6 ¶ 25).

Pleasant was charged with possession of a controlled substance.  *Id.* at 5 ¶ 17 (citing ECF No. 25 at 6 ¶ 27).  The state later dropped the charges because the warrant affidavit did not include it was certified under penalty of perjury.  *Id.* at 5 ¶ 18-19.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d

---

[8] Pleasant contends it is disputed whether she requested food, water, or the use of a restroom.  ECF No. 33 at 4 ¶ 13.  As noted *supra* note 4, Pleasant has not properly disputed that she did not request food, water, or the use of a restroom.

ORDER - 11

901, 906 (9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome

of the case, and a dispute is 'genuine' only if a reasonable trier of fact could

resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes*

*Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of

the basis for its motion, and identifying those portions" of the record and the

evidence that "demonstrate the absence of a genuine dispute of material fact.

*Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)) (quotation marks

omitted).  After the moving party has satisfied its burden, the non-moving party

must demonstrate, through evidence on the record, "specific facts" showing that

there is a genuine dispute of material fact for trial.  *Id.* at 324 (citation and

quotation marks omitted).

The court "must view the evidence in the light most favorable to the

nonmoving party and draw all reasonable inference in the nonmoving party's

favor."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation

omitted).  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a

judge . . . ."  *Anderson*, 477 U.S. at 255.  However, "[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## DISCUSSION

The State Defendants seek summary judgment on all claims against them. ECF No. 22.

### A. Arguments Conceded for Failure to Respond

The State Defendants seek summary judgment on Pleasant's 42 U.S.C. § 1983 claims regarding the Eighth and Fourteenth Amendments and the malicious prosecution claim, as well as Pleasant's emotional distress and negligent hiring, training, and supervision claims. ECF No. 22 at 13-19. Pleasant fails to address these arguments in her Response. *See generally* ECF No. 27. At the hearing, Pleasant's counsel failed to offer substantive argument in response, yet stated that Pleasant does not concede to summary judgment on these claims.

A district court may not construe a party's failure to respond to argument at summary judgment as "a complete abandonment of its opposition to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). But "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2); *see also Heinemann*, 731 F.3d at 917. Moreover, district courts often treat a party's failure to respond as tacit support for

ORDER - 13

the argument's validity, so long as the court independently determines that the

movant is entitled to summary judgment on the merits.  *See, e.g.*, *Versluys v.*

*Weizenbaum*, No. 21-cv-1694, 2023 WL 6880412, at *2 (D. Or. Oct. 18, 2023)

(citing *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins.*

*Agency, Inc.*, No. C14-5880, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16,

2016); *Kroeger v. Vertex Aerospace LLC*, No. CV 20-3030, 2020 WL 3546086, at

*8 (C.D. Cal. June 30, 2020)); *Reyes v. Wells Fargo Bank*, No. EDCV 17-909,

2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017); *Starr Indem. & Liab. Co. v.*

*Rolls-Royce Corp.*, No. CV-14-2594, 2016 U.S. Dist. LEXIS 118292, at *9 n.5 (D.

Ariz. Aug. 30, 2016).

The Court evaluates the merits of each argument that Pleasant has failed to

substantively oppose.

1. *Eighth Amendment*

Pleasant alleges that she was detained in violation of her Eighth Amendment

rights.  ECF No. 1 at 10 ¶ 6.35.  The State Defendants seek summary judgment on

this claim.  ECF No. 22 at 13-17.

The Fourteenth Amendment, not the Eighth Amendment, governs claims

related to the conditions of pretrial detention.  *Byrd v. Maricopa Cnty. Bd. of*

*Supervisors*, 845 F.3d 919, 924 n.2 (9th Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S.

520, 535 n.16 (1979)).  "Eighth Amendment protections apply only once a prisoner

1  has been convicted of a crime . . . ."  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239,

2  1246 n.5 (9th Cir. 2016) (citations omitted).  Although Pleasant was allegedly "on

3  DOC supervision" during the events underlying her claims, ECF No. 1 at 4 ¶ 3.7,

4  no facts or arguments have been articulated in support of her Eighth Amendment

5  claim.  *See* ECF No. 27.  None of the allegedly unconstitutional actions of law

6  enforcement stem from, pertain to, or arise out of a conviction.[9]

7      Summary judgment is granted for the State Defendants as to any Section

8  1983 claim asserting a violation of the Eighth Amendment.

9      *2. Fourteenth Amendment*

10     Pleasant alleges that she was detained in violation of her Fourteenth

11  Amendment rights.  ECF No. 1 at 8 ¶ 5.29, 10 ¶ 6.35.  The State Defendants seek

---

[9] The Court notes that it has previously advised Pleasant's counsel of this legal

principle.  *See* Order at 13-14, *Lobdell v. Cnty. of Spokane*, No. 22-cv-20 (E.D.

Wash. Mar. 16, 2023), ECF No. 17, *aff'd*, No. 23-35251, 2024 WL 4234875 (9th

Cir. Sept. 19, 2024).  Although Pleasant filed her Complaint 10 days before the

Court entered the Order in *Lobdell*, Pleasant's counsel should have been aware of

this issue by the time he filed the Response to the instant motion in May 2024 and

certainly by the August 2024 motion hearing, ECF No. 38.

summary judgment on this claim on qualified immunity grounds.  ECF No. 22 at 13-17.

"[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights."  *Albright v. Oliver*, 510 U.S. 266, 272 (1994). "[T]he substantive protections of the [D]ue [P]rocess [C]lause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression."  *Williams v. Fresno Cnty. Dep't of Soc. Servs.*, No. 21-cv-596, 2021 WL 3033578, at *6 (E.D. Cal. July 19, 2021) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)), *report and recommendation adopted*, 2021 WL 4751408 (E.D. Cal. Oct. 12, 2021).

"To prevail on a substantive due process claim under the Fourteenth Amendment, [a plaintiff] must show that an officer's conduct 'shocks the conscience.'"  *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).  "The 'critical consideration [is] whether the circumstances are such that actual deliberation is practical.'"  *Id.* (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)) (alteration in original).  "If so, 'an officer's "deliberate indifference" may suffice to shock the conscience,' . . . and the plaintiff may prevail by showing that the officer 'disregarded a known or obvious consequence of his action[.]'"  *Id.* at 692-93

ORDER - 16

(quoting *Wilkinson*, 610 F.3d at 554; *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)).

Viewing the evidence in the light most favorable to Pleasant, her detention did not "shock the conscience." Pleasant was detained for around three hours before being read her Miranda rights at 5:32 p.m. ECF No. 33 at 4 ¶ 12 (citing ECF No. 25 at 6 ¶ 22). During this time, Pleasant was allowed to leave the police vehicle to smoke and walk her dogs. *Id.* at 5 ¶ 14 (citing ECF No. 25 at 7 ¶ 30; ECF No. 25-3; ECF No. 25-4). While Pleasant disputes whether she requested food, water, or to use a bathroom, Pleasant has submitted no evidence in the record to establish that she made such requests. *See* ECF No. 33 at 4 ¶ 13. Further, the Court may not "credit a party's version of events that the record, such as an unchallenged video recording of the incident, 'quite clearly contradicts.'" *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (quoting *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018)). The uncontested video and audio evidence in this case clearly refutes Pleasant's unsupported argument that she requested and was denied food, water, or an opportunity to use the bathroom. *See* ECF Nos. 25-2 to 25-4 (dashcam videos).

No reasonable jury could conclude from this evidence that the state-officer Defendants' detention of Pleasant shocked the conscience.

The Court next assesses whether summary judgment is warranted on

qualified immunity grounds.  "To determine whether an officer is entitled to qualified immunity, the Court asks, in the order it chooses, (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018) (quoting *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)) (quotation marks and alterations omitted). "While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011)) (emphases in original).  If the answer to either question is no, then the officer cannot be held liable for damages.  *Id.* (citation omitted).

As explained above, there is no question for the jury on the first prong, but the Court nevertheless considers the second prong—whether the right Pleasant is asserting was clearly established at the time she was detained.  Even if Pleasant could establish that state-officer Defendants violated her Fourteenth Amendment right to substantive due process in the manner she has alleged, the law was so not so clearly established that these officers would have known their conducted violated the Constitution.

"The 'clearly established' standard . . . requires that the legal principle

clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "[T]he right must be defined with specificity," not at "a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (citation and quotation marks omitted). "It is not necessary . . . that the very action in question has previously been held unlawful. . . . But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (citations and quotation marks omitted). "When this test is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez*, 897 F.3d at 1132-33 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"The plaintiff 'bears the burden of showing that the rights allegedly violated were clearly established[]'" at the time of the alleged violation. *Gordon*, 6 F.4th at 969 (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)). However, when considering this question of law, a court draws on its "'full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Id.* (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

ORDER - 19

In March 2020, the law was not clearly established that detaining an individual for three hours without food, water, or the use of bathroom facilities violated the Fourteenth Amendment. *See, e.g., Foster v. Burnes*, No. 22-cv-934, 2023 WL 8544423, at *4 (E.D. Cal. Dec. 11, 2023), *report and recommendation adopted,* 2024 WL 495098 (E.D. Cal. Feb. 8, 2024) (finding no Eighth Amendment constitutional violation for a six hour deprivation of food, water, access to bathrooms, or medical attention);[10] *Gunn v. Tilton*, No. 08-cv-1039, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (finding deprivation of access to water for six hours and to restrooms for three to four hours was a not substantial deprivation under the Eighth Amendment) (citation omitted); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) ("Plaintiff has failed to

---

[10] As noted above, the Eighth Amendment applies to the conditions of confinement for prisoners serving a criminal sentence, whereas the Fourteenth Amendment applies to pretrial detainees. Courts sometimes "borrow[] from Eighth Amendment jurisprudence in giving shape to pretrial detainees' substantive due process rights," although the Eighth Amendment and Fourteenth Amendment standards differ. *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citations omitted).

1    establish that the five hour deprivation of water and ventilation rises to the level of

2    an Eighth Amendment violation.").  In sum, summary judgment for the State

3    Defendants is also warranted on qualified immunity grounds.

4        Summary judgment is granted for the State Defendants as to any Section

5    1983 claim asserting a violation of the Fourteenth Amendment.

6        *3.  Malicious Prosecution*

7        Pleasant alleges that she was subjected to malicious prosecution after she

8    refused to cooperate in a drug investigation.  ECF No. 1 at 10-11 ¶¶ 7.29-7.32.

9    The State Defendants seek summary judgment on this claim.  ECF No. 22 at 17-18.

10       "Federal courts rely on state common law for elements of malicious

11   prosecution."  *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citing

12   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)).  "Malicious

13   prosecution has five elements under Washington law: 1) the defendant began or

14   continued a prosecution; 2) without probable cause; 3) with malice; 4) in a

15   proceeding terminated in the plaintiff's favor; 5) to plaintiff's injury."  *Lassiter v.*

16   *City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (citing *Clark v. Baines*, 84

17   P.3d 245, 248-49 (Wash. 2004)).  "Additionally, to maintain a [Section] 1983

18   action for malicious prosecution, 'a plaintiff must show that the defendants

19   prosecuted him [or her] for the purpose of denying him [or her] equal protection or

20

another specific constitutional right.'" *Mills*, 921 F.3d at 1169 (quoting *Awabdy*, 368 F.3d at 1066) (original alterations omitted).

Pleasant alleges that the charges against her were dismissed due a lack of probable cause. ECF No. 1 at 11 ¶ 7.34. As explained in greater detail below, the undisputed facts demonstrate that the Troopers' actions on March 11, 2020, were supported by probable cause. *See infra* Section B; *see also Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023) ("Generally, 'the existence of probable cause is a question for the jury,' though summary judgment is appropriate when there is no genuine issue of fact and if 'no reasonable jury could find an absence of probable cause under the facts.'" (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)). Moreover, a state judicial officer determined that there was probable cause to search Pleasant's vehicle for evidence of a state drug offense. *See* ECF No. 27-3 at 5. Pleasant offers no facts or arguments to support her malicious prosecution claim outside of the bare allegations in the Complaint. *See generally* ECF No. 27.

Summary judgment is granted for the State Defendants as to Pleasant's claim for malicious prosecution.

1    *4. Eleventh Amendment*

2        The State Defendants argue that Pleasant's state-law intentional infliction of

3    emotional distress and negligent hiring, training, and supervision claims are barred

4    under Eleventh Amendment immunity.  ECF No. 22 at 19.

5        The Eleventh Amendment provides the States immunity from suit in federal

6    court brought by their own citizens, unless waived under certain circumstances.

7    *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019) (citing *Lapides v. Bd. of*

8    *Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618-21 (2002)).  Further, Eleventh

9    Amendment immunity extends to any entity that is an "arm of the state."  *Kohn v.*

10   *State Bar of Cal.*, 87 F.4th 1021, 1026 (9th Cir. 2023) (quoting *Mt. Healthy City*

11   *Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)) (alteration and other

12   citations omitted).

13       The State Defendants are state officers, a state office, and the State of

14   Washington itself.  ECF No. 1 at 2 ¶ 1.1.

15           a.  State Officers

16       The Complaint names the state-officer Defendants in their official and

17   individual capacities.  *Id.*

18

19

20

Pleasant brings her state law claims against the state-officer Defendants in their official capacities. [11]  *See* ECF No. 50 at 6.  "[T]he [E]leventh [A]mendment bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their *official* capacities alleging a violation of state law."  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  Therefore, Pleasant's state-law claims against the state-officer Defendants in their official capacities are barred by the Eleventh Amendment.  *See id.*

---

[11] Pleasant's Complaint states that her claims for "unlawful detention, malicious prosecution, and for committing acts under color . . . [which deprived her] of her rights secured by the United States Constitution and the laws of the United States[,]" are against Defendants "individually and in their official capacities."  ECF No. 1 at 2 ¶ 1.1.  The Complaint does not explicitly state whether her claims for intentional infliction of emotional distress and negligent hiring, training, and supervision are against the state-officer Defendants in their official or individual capacities.  *See id.* at 12-13 ¶¶ 8.29-9.35.  In her Supplemental Briefing on Issues Related to Eleventh Amendment, Pleasant again failed to clarify this ambiguity, stating only that she is seeking relief "from law enforcement in both their professional and individual capacities."  ECF No. 50 at 6.

ORDER - 24

To the extent that Pleasant also brings her state law claims against the state-officer Defendants in their individual capacities, *see* ECF No. 50 at 6, the State Defendants acknowledge that the Eleventh Amendment "does not bar claims against the state officials in their personal or individual capacities."[12]  ECF No. 48 at 4 (citing *Pena*, 976 F.2d at 472-73).  However, the State Defendants assert that state-officer Defendants are entitled to any applicable defenses, including qualified immunity, and that "the sought-for injunctive relief involving the training of state

---

[12] The State Defendants initially sought blanket application of the Eleventh Amendment to the state law claims against the state-officer Defendants, without specific argument about how the Eleventh Amendment provides immunity for the state-officer Defendants sued in their individual capacities.  ECF No. 22 at 19.  On September 9, 2024, the Court ordered the parties to submit supplemental briefing as to whether: (1) Pleasant's claims—under federal and state law—against the State, State Patrol, and state officials in either their individual capacities are cognizable in light of the Eleventh Amendment; (2) if the Eleventh Amendment precludes certain claims, which claims, if any, survive; and (3) what relief sought by Pleasant is recoverable as to each State Defendant, consistent with the Eleventh Amendment.  ECF No. 47 at 3-4.

officers seems clearly to be inapplicable to Defendants in their individual capacities." *Id.* at 6.

"[T]he Eleventh Amendment [does] not bar federal or pendent state claims seeking damages against a state official acting personally." *Ashker v. Cal. Dep't of Corrs.*, 112 F.3d 392, 394-95 (9th Cir. 1997) (citing *Pena*, 976 F.2d at 472-74); *see also Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). But "[a]n official sued in his personal capacity, although deprived of [E]leventh [A]mendment immunity, may assert a defense of qualified immunity." *Pena*, 976 F.2d at 473 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Thus, Pleasant's state-law claims for intentional infliction of emotional distress and negligent hiring, training, and supervision against the state-officer Defendants in their individual capacities are not barred by the Eleventh Amendment.

b. Washington State Patrol

In her Complaint, Pleasant identifies Defendant Washington State Patrol as "a Washington State Law Enforcement Agency Organized under the Washington Revised Code." ECF No. 1 at 3 ¶ 2.5. The Washington State Patrol is an arm of the state and entitled to Eleventh Amendment immunity. *See Bruglia v. Wash. State Patrol*, No. C13-5891, 2014 WL 2216066, at *4 (W.D. Wash. Apr. 8, 2014), *report and recommendation adopted in relevant part*, 2014 WL 2216007 (W.D.

Wash. May 29, 2014); *Hanson v. Wash. State Patrol*, No. 13-CV-166, 2013 WL 4518594, at *2 (E.D. Wash. Aug. 26, 2013).  Pleasant has not argued that the Washington State Patrol is anything other than an arm of the state, *see generally* ECF No. 27, and her counsel did not address this issue at the hearing.  Thus, Pleasant's claims against the Washington State Patrol are barred by the Eleventh Amendment.

       c.  State of Washington

Pleasant's counsel conceded at the hearing that the State of Washington is immune from suit.  The Court concurs.

       d.  Disposition of State Law Claims Under the Eleventh Amendment

"The Eleventh Amendment is a limit on federal courts' jurisdiction." *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (citing *California v. Deep Sea Rsch., Inc.*, 523 U.S. 491, 501 (1998)).  "Dismissals for lack of jurisdiction 'should be without prejudice so that a plaintiff may reassert [her] claims in a competent court.'"  *Id.* (quoting *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988)) (original alteration omitted).  Accordingly, the Court dismisses without prejudice the state-law claims against the state-officer Defendants in their official capacities, the Washington State Patrol, and the State of Washington.

ORDER - 27

**B. Section 1983 Claims Based on the Fourth Amendment**

Given the Court's above rulings, Pleasant's only remaining federal claim is her Section 1983 claim for violation of her Fourth Amendment right to be free from unreasonable search or seizure. ECF No. 27 at 12-22.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation and quotation marks omitted). To state a claim under Section 1983, a plaintiff must show that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

There appears to be no dispute that state-officer Defendants acted under color of state law during all relevant times. *See, e.g.,* ECF No. 33 at 2 ¶ 2. Therefore, the Court proceeds to the relevant alleged constitutional violation.

ORDER - 28

"To prevail on a [S]ection 1983 claim based on the Fourth Amendment, a plaintiff must show that the state actor's conduct was an unreasonable search or seizure." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018) (citation omitted). "Whether a search is reasonable under the Fourth Amendment requires a case-by-case balancing of the need for the particular search against the invasion of personal rights that the search entails[.]"[13] *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (citation and quotation marks omitted). A court must consider "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559) (quotation marks omitted).

The State Defendants organize their argument as a timeline of the alleged events that conceivably might have violated the Fourth Amendment, arguing that the actions of law enforcement throughout were constitutional. *See* ECF No. 22 at 6-13. Pleasant mirrors this timeline approach in her Response. *See* ECF No. 27 at

---

[13] "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967) (citing *Ker v. State of California*, 374 U.S. 23, 30 (1963)).

ORDER - 29

12-22.  Likewise, the Court addresses the events individually and in chronological order.

### 1.  The Traffic Stop

Pleasant alleges that the initial traffic stop of her vehicle was without reasonable suspicion or probable cause and was therefore unconstitutional.  ECF No. 1 at 7 ¶ 4.31, 8-9 ¶ 5.31, 9 ¶ 6.29.

As an initial matter, Pleasant argues that a pretextual stop is unconstitutional under the Washington Constitution.  ECF No. 27 at 10 (citing *State v. Myers*, 69 P.3d 367, 369 (Wash. Ct. App. 2003)).  The argument is inapposite.  The Complaint does not articulate a cause of action under the Washington Constitution.  Pleasant's responsive briefing fails to explain the legal basis for any such cause of action, and "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations." *Peltier v. Sacks*, 328 F. Supp. 3d 1170, 1185 (W.D. Wash. 2018) (citation omitted); *see also Sys. Amusement, Inc. v. State*, 500 P.2d 1253, 1254 (Wash. Ct. App. 1972); *Spurrell v. Bloch*, 701 P.2d 529, 534-35 (Wash. Ct. App. 1985), *review denied*, 104 Wash.2d 1014 (Wash. 1985); *Reid v. Pierce Cnty.*, 961 P.2d 333, 342-43; *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001), *review denied*, 52 P.3d 520 (Wash. 2002); *Hannum v. Wash. State Dep't of Licensing*, 181 P.3d 915, 919 (Wash. Ct. App. 2008); *Janaszak v. State*, 297 P.3d 723, 734 (Wash. Ct.

App. 2013); *U4IK Gardens, LLP v. State*, 18 Wash. App. 2d. 1029, at *6 (Wash. Ct. App. 2021) (unpublished), *review denied*, 498 P.3d 960 (Wash. 2021).

Next, Pleasant contends that the officers used the traffic violation as a pretext to conduct a drug interdiction. ECF No. 27 at 12. Under the Fourth Amendment of the federal Constitution, which is the authority Pleasant invoked in the Complaint, whether the traffic stop was pretextual is irrelevant. "[T]he subjective motives of the officers do not invalidate an otherwise proper stop. All that is required is that, on an objective basis, the stop 'not be unreasonable under the circumstances.'" *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). "That means 'that the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops.'" *Id.* (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (citations and emphasis omitted).

The State Defendants argue that the traffic stop was constitutional because Trooper Fenster observed Pleasant's vehicle engaged in a violation of the traffic code. ECF No. 22 at 6. In the dashcam video, Trooper Fenster is stopped on the

right side of the road, Craig drives past Trooper Fenster in the right lane before moving to the left, and Trooper Fenster pulls out to pursue. ECF No. 25-2 at 00:00-01:34. In his declarations, Trooper Fenster states that his emergency lights were activated while he was stopped on the shoulder.[14] ECF No. 25 at 2 ¶ 3; ECF No. 31 at 2 ¶ 4. Trooper Fenster explains that, in the dashcam footage, there is a blinking "L" towards the top of the screen, which indicates that his emergency lights were active at the time of recording. ECF No. 31 at 2 ¶ 5; *see* ECF No. 25-2 at 00:00-00:20. In the video, Trooper Fenster explains the reason for the stop: Craig failed to move into the left lane before passing Trooper Fenster. ECF No. 25-2 at 01:45-03:45.

Pleasant further contends that Trooper Fenster could not have believed Craig violated RCW 46.61.212 because there was no emergency and, even if there had been, the statute allows a mere reduction in speed rather than yielding to the left lane. ECF No. 27 at 12. At the hearing, Pleasant's counsel added that there was

---

[14] Pleasant contends there is a dispute as to whether Trooper Fenster's emergency lights were on. ECF No. 33 at 2 ¶ 2. As noted *supra* note 4, Pleasant has not properly disputed that Trooper Fenster's emergency lights were on when Craig passed him in the right lane.

ORDER - 32

1  no emergency stop given that there was no other vehicle stopped with Trooper

2  Fenster.

3      The argument is premised upon a strained reading of the statute and

4  counsel's personal definition of "emergency."  Contrary to counsel's argument, the

5  presence of a second vehicle is not necessary for a roadway to be considered an

6  emergency zone.  In relevant part, the statute defines "[a]n emergency or work

7  zone" to include "the adjacent lanes of the roadway 200 feet before and after: . . .

8  [a] police vehicle properly and lawfully displaying a flashing, blinking, or

9  alternating emergency light or lights[.]"  RCW 46.61.212(1)(d).  RCW

10  46.61.212(2)(b) provides in relevant part that "[t]he driver of any motor vehicle,

11  upon approaching an emergency or work zone, shall: . . . proceed with caution,

12  reduce the speed of the vehicle, and, if the opportunity exists, with due regard for

13  safety and traffic conditions, and under the rules of this chapter, yield the right-of-

14  way by passing to the left at a safe distance and simultaneously yield the right-of-

15  way to all vehicles traveling in the proper direction upon the highway[.]"  After

16  review of the video evidence, there is no genuine dispute that Craig had the

17  opportunity to move into the left lane.  ECF No. 25-2 at 00:00-01:34.

18      More importantly, whether Craig violated a traffic code is not the subject of

19  this litigation.  At issue is whether Trooper Fenster had reasonable suspicion that

20  the traffic code was violated.  All that reasonable suspicion requires is that the

ORDER - 33

officer is "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *See Montero-Camargo*, 208 F.3d at 1129 (emphasis omitted). Here, the undisputed evidence, including dashcam footage, indicates that Trooper Fenster had reasonable suspicion that Craig violated RCW 46.61.212.

There is no genuine dispute of fact precluding judgment as a matter of law; summary judgment is granted as to any Fourth Amendment violation arising from the traffic stop.

### 2. *Removal from Vehicle and Request for Identification*

Pleasant argues that it was a violation of her Fourth Amendment rights for the Troopers to remove her from the car and for Trooper Fenster to "demand[]" her identification.[15]  ECF No. 1 at 7 ¶¶ 4.31-4.32, 8-9 ¶¶ 5.31-5.32.

---

[15] Pleasant cites to the Washington Constitution and Washington case law concerning Washington's constitutional protections to argue she was illegally made to give law enforcement her identification.  ECF No. 27 at 14-16.  But as stated above, the Complaint asserts no cause of action under the Washington Constitution, and even if it did, such a claim would not be legally cognizable. *See Blinka*, 36 P.3d at 1102.

ORDER - 34

1    "To be lawful, a traffic stop must be limited in its scope: an officer may

2    'address the traffic violation that warranted the stop,' make 'ordinary inquiries

3    incident to the traffic stop,' and 'attend to related safety concerns.'" *United States*

4    *v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting *Rodriguez v. United States*,

5    575 U.S. 348, 354-55 (2015)). "The stop may last 'no longer than is necessary to

6    effectuate' these purposes and complete the traffic 'mission' safely." *Id.* (quoting

7    *Rodriguez*, 575 U.S. at 354-55). The "touchstone" of the Fourth Amendment "is

8    reasonableness." *Id.* at 1240.

9    "[I]t is well established that an officer effecting a lawful traffic stop may

10   order the driver and the passengers out of a vehicle[.]" *United States v. Williams*,

11   419 F.3d 1029, 1030 (9th Cir. 2005) (citing *Maryland v. Wilson*, 519 U.S. 408, 410

12   (1997)). Therefore, the Troopers did not violate Pleasant's Fourth Amendment

13   rights by ordering her to step out of the car. Moreover, Trooper Christensen asked

14   Pleasant to exit the vehicle only after she became agitated. ECF No. 27-2 at 3. At

15   that point, the "legitimate and weighty interest in officer safety" clearly

16   outweighed the "de minimis" intrusion of requiring a passenger to exit an already

17   stopped vehicle. *See Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (discussing

18   *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) and *Wilson*, 519 U.S. at 413-

19   15) (quotation marks omitted).

20

ORDER - 35

In contrast, "an officer may not extend a traffic stop to demand identification from a passenger where 'knowing the passenger's name would not make the officers any safer." *United States v. Ramirez*, 98 F.4th 1141, 1144 (9th Cir. 2024) (quoting *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019)) (alterations omitted). However, Trooper Fenster did not prolong the traffic stop by checking Pleasant's identification. Trooper Fenster obtained[16] Pleasant's identification only after learning that Craig's license was likely suspended, such that Craig could not legally drive the vehicle away from the roadside. ECF No. 27-2 at 2. He sought Pleasant's identification to confirm whether she could lawfully drive the vehicle after the stop concluded. ECF No. 25 at 3 ¶ 8. It was well within the mission of a traffic stop for an officer to ensure there is a safe and lawful disposition for a

---

[16] The evidence in the record does not support Pleasant's contention that Trooper Fenster "demand[ed]" her identification. *See* ECF No. 1 at 7 ¶ 4.31, 8-9 ¶ 5.31. Instead, the dashcam audio indicates that Pleasant was the first to mention her driver's license:

| | |
|---|---|
| Trooper Fenster: | Hello ma'am, um, it sounds like his license might be suspended— |
| Pleasant: | I have mine right here. |
| Trooper Fenster: | Do you have a valid license? |
| Pleasant: | Yeah, I'm actually . . . [the exchange continues]. |

ECF No. 25-2 at 07:54-08:07.

ORDER - 36

stopped vehicle.  *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."); *Rodriguez*, 575 U.S. at 355 (noting that the typical mission of a traffic stop will "involve checking the driver's license . . . and inspecting the automobile's registration and proof of insurance" in order to "ensur[e] that vehicles on the road are operated safely and responsibly") (citations omitted).

Pleasant offers no genuine dispute about the foregoing sequence of events or the Troopers' motivations.  Accordingly, summary judgment is granted for the State Defendants as to any claim that the Fourth Amendment was violated when the Troopers checked Pleasant's license and asked her to step out of the vehicle.

### 3. Detention Until Dog Sniff

Pleasant claims that she was detained unlawfully while her vehicle was unlawfully subject to a dog sniff.  ECF No. 1 at 9 ¶¶ 5.32-5.34, 10 ¶¶ 6.32-6.34; *see also* ECF No. 27 at 21.

"[L]aw enforcement may not extend a traffic stop with tasks unrelated to the traffic mission, absent independent reasonable suspicion."  *Landeros*, 913 F.3d at 866 (citing *Rodriguez*, 575 U.S. at 357-58).  "The reasonable suspicion standard is not a particularly high threshold to reach" and allows officers to utilize both "commonsense judgments and inferences about human behavior" and "their own

experience and specialized training to arrive at conclusions that might well elude an untrained person." *Taylor*, 60 F.4th at 1241 (quoting *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc); *Kansas v. Glover*, 589 U.S. 376, 380-81 (2020)) (quotation marks omitted).

"A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). However, law enforcement may not prolong a traffic stop for the sole purpose of conducting a dog sniff, without independent reasonable suspicion for the sniff. *Rodriguez*, 575 U.S. at 357-58.

Neither Pleasant's detention through completion of the dog sniff nor the dog sniff itself violated her Fourth Amendment rights.

First, the traffic stop had not ended by the time the dog sniff occurred. According to Trooper Fenster's declaration, the K9 unit arrived on the scene before he had finished running Pleasant's and Craig's licenses. ECF No. 25 at 4 ¶ 12. Trooper Fenster discovered that both Craig's and Pleasant's licenses were suspended, at which point it became part of the mission of the traffic stop to determine what to do with Pleasant's vehicle. According to the dashcam video, Trooper Gardiner deployed K9 Corbin about thirty minutes after the initial stop, before law enforcement had determined what to do with Pleasant's vehicle. *See*

ECF No. 25-2 at 29:15.  Pleasant offers no evidence to challenge this timeline. Therefore, from the time that law enforcement first stopped Pleasant's car, until the time of the dog sniff, no Fourth Amendment violation occurred because the traffic mission had not ended.  *See Taylor*, 60 F.4th at 1241.

Second, while conducting the traffic stop, Trooper Fenster developed reasonable suspicion to believe Pleasant was engaged in criminal drug activity, warranting her detention until a dog sniff could be conducted.  Trooper Fenster, an experienced police officer, witnessed multiple scent refreshers and a small piece of crumpled tin foil in the vehicle, which he recognized as consistent with drug use and covering up drug use.  ECF No. 25 at 3 ¶ 10, 4 ¶ 11.  He noticed Pleasant was carrying an unusually large amount of cash.  ECF No. 27-2 at 2.  He learned that Pleasant was on DOC supervision for a methadone charge, after using methadone to quit heroin.  *Id.*; *see Taylor*, 60 F.4th at 1242 (noting that whether someone is on supervision may support reasonable suspicion when presented with other evidence of a crime).  When Trooper Christensen asked whether Pleasant would consent to a vehicle search, she became agitated—particularly about police searching her bags—and accused the Troopers of harassing her.  ECF No. 27-2 at 3.  Therefore, even if the traffic mission had ended sometime before the dog sniff, Pleasant fails to raise a genuine dispute of fact over whether law enforcement had independent reasonable suspicion for Trooper Fenster to extend the detention to conduct a dog

sniff. *See United States v. Steinman*, 130 F.4th 693, 705 (9th Cir. 2025) ("[E]ven if we assume that [the trooper] did prolong the stop at some point after he learned that [the plaintiff] had a felony conviction, it is of no moment because he was entitled to do so based on his reasonable suspicion of an independent offense."); *United States v. Rodgers*, 656 F.3d 1023, 1027 (9th Cir. 2011) ("A period of detention may be permissibly extended where new grounds for suspicion of criminal activity continue to unfold." (quoting *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005)) (quotation marks and alterations omitted).

Third, Pleasant suggests that the dog sniff itself was an unconstitutional warrantless search. ECF No. 27 at 21. A dog sniff is not a search for Fourth Amendment purposes. *See Caballes*, 543 U.S. at 409.

Pleasant offers no genuine dispute as to the facts surrounding the dog sniff and her detention pending the dog sniff. Summary judgment is granted for the State Defendants as to any claim that Pleasant's detention through the dog sniff or the dog sniff itself violated her Fourth Amendment rights.

### 4. Detention After Dog Sniff

Finally, Pleasant takes issue with the total length of her detention. ECF No. 27 at 19-20. However, she has not raised a genuine issue of fact material to whether her continued detention after the dog sniff violated her Fourth Amendment rights.

ORDER - 40

1      To recap, the officers initially stopped Pleasant's car for a traffic violation,

2    then discovered that (1) neither Craig or Pleasant had a valid license, (2) Pleasant

3    was on supervision for a drug conviction, (3) there were signs of illicit drug use in

4    plain view within the car, and (4) Pleasant demonstrated various behaviors

5    suggesting concealment of criminal activity.  The detention was permissibly

6    extended as these new grounds for suspicion of criminal activity unfolded.  *See*

7    *Rodgers*, 656 F.3d at 1027.  Then, K9 Corbin alerted during a sniff of Pleasant's

8    car.  ECF No. 25 at 4 ¶ 13, ECF No. 25-1 at 4.  After these events, it was

9    reasonable for the officers to continue the detention while they obtained and

10   executed a search warrant for the vehicle.

11     "When faced with special law enforcement needs, diminished expectations

12   of privacy, minimal intrusions, or the like, the [Supreme] Court has found that

13   certain general, or individual, circumstances may render a warrantless search or

14   seizure reasonable."  *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (citations

15   omitted).  For example, a detention, incident to the execution of a search warrant,

16   of a person found inside or immediately outside of the premises to be searched is

17   reasonable under the Fourth Amendment, even without probable cause to arrest

18   that person, "because the limited intrusion on personal liberty is outweighed by the

19   special law enforcement interests at stake."  *Bailey v. United States*, 568 U.S. 186,

20   193, 202 (2013).  The reasonableness standard "requires a careful balancing of the

ORDER - 41

1    nature and quality of the intrusion on the individual's Fourth Amendment interests

2    against the countervailing governmental interests at stake." *Calonge v. City of San*

3    *Jose*, 104 F.4th 39, 45 (9th Cir. 2024) (quoting *Graham v. Connor*, 490 U.S. 386,

4    397 (1989)) (quotation marks omitted).  "In evaluating the reasonableness of the

5    length of [a plaintiff's] detention," the Ninth Circuit "take[s] care to consider

6    whether the police [we]re acting in a swiftly developing situation" and cautions

7    against "indulg[ing] in unrealistic second-guessing of the officers' actions."

8    *Liberal v. Estrada*, 632 F.3d 1064, 1080 (9th Cir. 2011) (quoting *United States v.*

9    *Sharpe*, 470 U.S. 675, 686 (1985)) (quotation marks omitted), *abrogated in other*

10   *part by Hampton v. California*, 83 F.4th 754, 772 (9th Cir. 2023).  In addition, the

11   reasonableness inquiry includes considering "whether a suspect's actions

12   contribute[d] to the added delay about which he complains," and whether the

13   officer used "threats of force, unnecessarily delays, exaggerated displays of

14   authority or other coercive tactics."  *Liberal*, 632 F.3d at 1080-81 (quoting *Sharpe*,

15   470 U.S. at 688; *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir.

16   1996)) (quotation marks omitted).

17        The undisputed record details that Pleasant's detention was not

18   unreasonable.  The officers acted diligently in seeking, obtaining, and executing a

19   search warrant: Trooper Fenster submitted the search warrant application at

20   approximately 4:24 p.m., and the officers had completed the search by 5:32 p.m.

ORDER - 42

*See* ECF No. 27-2 at 3-4; ECF No. 25 at 6 ¶ 22.  Once the officers had conducted the search, they interviewed Craig and Pleasant and arranged for Pleasant's vehicle to be towed.  *See* ECF No. 27-2 at 4.  As detailed more extensively above, the officers were confronted with a vehicle on the side of the road with no one to drive it.  There is no evidence that the officers unnecessarily extended Pleasant's detention or otherwise acted unreasonably.  *See* ECF Nos. 25-3, 25-4; *Liberal*, 632 F.3d at 1080-81 (quoting *Torres-Sanchez*, 83 F.3d at 1129).

Pleasant asserts that the length of her detention was "beyond the scope of the traffic stop" and that "[s]he could have been picked up or dropped off in Ritzville since she could not drive the vehicle."  ECF No. 27 at 20.  That is what occurred. After the car was towed, Trooper Fenster transported Craig and Pleasant to Ritzville, released Craig in Ritzville, and then took Pleasant to the WSP Ritzville Detachment Office to meet with an FBI agent, as she had expressed interest in providing information to law enforcement.  ECF No. 27-2 at 4-5; *see Liberal*, 632 F.3d at 1080 (quoting *Sharpe*, 470 U.S. at 688).  Thereafter, she was released to her father in Ritzville.  ECF No. 27-2 at 4-5.

In view of the totality of the circumstances, Plaintiff has not raised a genuine dispute over any material fact that would permit a reasonable jury to find that Pleasant's continued detention, even without probable cause, was unreasonable.

1   The Court grants summary judgment for the State Defendants on any Fourth

2   Amendment claim arising out of Pleasant's continued detention after the dog sniff.

3       *5. The Search Warrant*

4       Pleasant argues that the search conducted pursuant to the warrant was

5   deficient because the warrant was not supported by a sworn statement.  ECF No. 1

6   at 9-10 ¶¶ 6.30-6.38.  This argument fails for two reasons.

7       First, the validity of an "Oath or affirmation" for Fourth Amendment

8   purposes does not turn on technical or formulaic recitations within an affidavit.

9   *See United States v. Bueno-Vargas*, 383 F.3d 1104, 1110-12 (9th Cir. 2004)

10  (rejecting various arguments that the affidavit was constitutionally deficient

11  because it was merely signed under penalty of perjury and had been faxed rather

12  than given under an in-person oath).  "The question whether a statement is made

13  under oath or affirmation turns on whether the declarant expressed the fact that he

14  or she is impressed with the solemnity and importance of his or her words and of

15  the promise to be truthful, in moral, religious, or legal terms."  *Id.* at 1110.  The

16  omission of certain language in an affidavit supporting a search warrant is more

17  akin to a "technical error," rather than a "fundamental error," under Ninth Circuit

18  precedent.  *See United States v. Henderson*, 906 F.3d 1109, 1114-15 (9th Cir.

19  2018) (quoting *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1283 (9th Cir.

20  1992)) (quotation marks and alterations omitted).  By definition, "[f]undamental

errors are those that result in constitutional violations[.]" *Id.* at 1115 (quoting

*Negrete-Gonzales*, 966 F.2d at 1283) (quotation marks and alterations omitted).

Technical errors, in contrast, do not "rise[] to a 'constitutional magnitude.'"

*United States v. Williamson*, 439 F.3d 1125, 1133 (9th Cir. 2006) (quoting *United

States v. Martinez-Garcia*, 397 F.3d 1205, 1213 (9th Cir. 2005)).

It is undisputed that the affidavit did not include a certification of truth under

penalty of perjury.  ECF No. 33 at 4 ¶ 10, 5 ¶¶ 18-19; *see also* ECF No. 25-1 at 3-5

(Affidavit).  It is also undisputed that Trooper Fenster signed the search warrant

affidavit as an "affiant" and did so "being first duly sworn on oath."  ECF No. 25-1

at 3.

Pleasant's assertion that the search warrant affidavit was constitutionally

deficient is solely based on its noncompliance with RCW 9A.72.085,[17] a state law

governing sworn statements.  ECF No. 27 at 22.  State law requirements, like those

in RCW 9A.72.085, do not control the Fourth Amendment.  *See United States v.*

_____

[17] RCW 9A.72.085(1) (2019) provided that an unsworn written statement may be

treated like a sworn statement if, among other requirements, the written statement

recites that it is certified by the declarant to be true under penalty of perjury and

states the date and place of its execution.  RCW 9A.72.085 was repealed in 2019,

effective July 1, 2021.  S.B. 5017 at § 6, 66th Leg., Reg. Sess. (Wash. 2019).

ORDER - 45

*Artis*, 919 F.3d 1123, 1130 (9th Cir. 2019) (finding it "unnecessary" to determine whether the execution of a search warrant violated state law where, "[e]ven if such a violation occurred, the warrants would still be valid under the Fourth Amendment"). Rather, noncompliance with RCW 9A.72.085 amounts to a technical error that does not rise to a constitutional magnitude. *See Williamson*, 439 F.3d at 1133. The affidavit meets the "oath or affirmation" requirement of the Fourth Amendment as Trooper Fenster knew that he was making a solemn promise to the magistrate judge that all the information he was providing was true and correct. *See Bueno-Vargas*, 383 F.3d at 1112. "That is all the 'Oath or affirmation' clause requires." *See id.*

Second, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)) (footnote omitted). Therefore, law enforcement officers generally have qualified immunity when acting pursuant to a warrant. *See id.* at 555-56. Here, it is undisputed that the state-officer Defendants conducted the search pursuant to a search warrant issued by a state superior court judge. ECF No. 33 at 4 ¶ 10.

Therefore, the state-officer Defendants would be entitled to qualified immunity from Section 1983 liability for technical defects in the warrant application.

Therefore, the Court grants summary judgment for the State Defendants as to any Fourth Amendment violation arising out of the search warrant or the search warrant affidavit.

## C. Remaining State Law Claims

Following the above rulings, all that remains are Pleasant's state-law claims for (1) intentional infliction of emotional distress against Troopers Christensen, Fenster, Norton, and Gardiner in their individual capacities and (2) negligent hiring, training, and supervision against Chief Batiste and Troopers Christensen, Fenster, Norton, and Gardiner in their individual capacities.[18]  *See* ECF No. 1 at 12-13 ¶¶ 8.29-9.35.

As explained above, the Eleventh Amendment does not necessarily bar claims against state officials in their individual capacities, and Defendants did not seek summary judgment on these claims based on qualified immunity or any other defenses.

---

[18] Pleasant also brought a claim of negligent training against Trooper Barrett, who the Court has since dismissed.  ECF No. 47.

The Court's jurisdiction over state law claims that form "part of the same case or controversy" arises out of 28 U.S.C. § 1367(a). "Ordinarily, 'if the federal claims are dismissed before trial[,] the state claims should be dismissed as well.'" *S. Cal. Edison Co. v. Orange Cnty. Transp. Auth.*, 96 F.4th 1099, 1109 (9th Cir. 2024) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (original alterations omitted). "When a district court 'has dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise supplemental jurisdiction' over remaining state law claims." *Pell v. Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(c)(3)). However, the Ninth Circuit requires that a district court provide notice and opportunity to be heard before sua sponte declining to exercise supplemental jurisdiction. *Ho v. Russi*, 45 F.4th 1083, 1086 (9th Cir. 2022).

Separately, "a trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quoting *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987)) (quotation marks and alteration omitted). "[T]he district court must give notice of its sua sponte intention to dismiss and provide the plaintiff with 'an opportunity to at least submit a written memorandum in opposition to such motion.'" *Id.* (quoting *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981)).

Notice is hereby given that the Court intends to decline to exercise supplemental jurisdiction and/or dismiss the remainder of the Complaint under Fed. R. Civ. P. 12(b)(6).  The Court is particularly inclined to dismiss Pleasant's claim that Troopers Christensen, Fenster, Norton, and Gardiner "failed to train law enforcement officers in proper procedures to obtain search warrants."  ECF No. 1 at 13 ¶ 9.30.  "In Washington, a cause of action for negligent training requires a plaintiff to show that a *subordinate employee* acted outside the scope of his or her employment."  *Koshelnik v. State*, No. 75032-1-I, 2016 WL 3456866, at *7 (Wash. Ct. App. June 20, 2016) (citing *LaPlant v. Snohomish Cnty.*, 271 P.3d 254, 256-57 (Wash. Ct. App. 2011)) (emphasis added).  Pleasant identifies no evidence in the record in support of her claim that Troopers Christensen, Fenster, Norton, and Gardiner failed to train a "subordinate employee" "in proper procedures to obtain search warrants."

Consistent with the below schedule, Pleasant shall provide a status report as to her intention to continue in this litigation.

**D. Pretrial Schedule**

On August 12, 2024, the Court entered an order striking all pretrial filing deadlines, the pretrial conference, and the jury trial, in light of outstanding issues rendering the existing schedule unfeasible.  ECF No. 43.

ORDER - 49

**CONCLUSION**

For the reasons stated above, the Court (1) grants summary judgment for all State Defendants on Pleasant's federal claims and (2) dismisses without prejudice Pleasant's state-law claims against the State of Washington, the Washington State Patrol, and the state-officer Defendants in their official capacities.

Accordingly, **IT IS HEREBY ORDERED:**

1.     The State Defendants' Motion and Memorandum for Summary Judgment, **ECF No. 22**, is **GRANTED in part and DENIED in part** in the manner explained above.

2.     **By no later than April 14, 2025, all remaining parties** shall file a brief setting forth their position as to (1) whether the Court should exercise supplemental jurisdiction and (2) whether the Court should dismiss any of Pleasant's remaining claims for failure to state a claim under Fed. R. Civ P. 12(b)(6).  Pleasant shall also indicate whether she intends to pursue this litigation further.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order; provide copies to counsel; **enter judgment on the federal claims** in favor of Defendants State of Washington, Washington State Patrol, Chief Batiste, Trooper Christensen, Trooper Fenster, Trooper Norton, and Trooper Gardiner; and **enter judgment of dismissal without prejudice** of the state-law claims against

ORDER - 50

Defendants State of Washington, Washington State Patrol, and the state-officer

Defendants (Chief Batiste and Troopers Christensen, Fenster, Norton, and

Gardiner) in their official capacities.

**DATED** March 31, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 51